THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MADHUPRIYA DUGGISETTY, | ) | |
| | ) | |
| Appellant, | ) | No. 20 C 2026 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| PATRICK S. LAYNG | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

## **MEMORANDUM OPINION & ORDER**

Appellant Madhupriya Duggisetty appeals the denial of her discharge and the denial of her motion for new trial by the United States Bankruptcy Court for the Northern District of Illinois. [Dkt. 23]. Because the Bankruptcy Court's decisions as to both issues were supported by the record, Duggisetty's appeal is denied.

## **BACKGROUND**

**I.     Duggisetty's Petition and Discovery of Undisclosed Assets**

Duggisetty filed her voluntary petition for Chapter 7 Bankruptcy Relief on January 2, 2018. (Dkt. 26-1 at 7).  As part of her petition, Duggisetty had to disclose her property in documents entitled Schedules A-J, a Statement of Financial Affairs, and a Statement of Intention. (*Id.* at 16–49).  In response to Item No. 12 on Schedule A/B, which asks if a debtor owns any "Jewelry… Examples: everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver," Duggisetty checked the box indicating, "No." (*Id.* at 18).  In response to Item No. 16 on Schedule A/B, which asks if a debtor owns any cash, for example in a safety deposit box. Duggisetty likewise checked the box indicating, "No."  (*Id.*)

1

The Statement of Financial Affairs for Individuals Filing for Bankruptcy (the "SOFA") asks various financial questions which debtors must answer under penalty of perjury. Question 21 of the SOFA asks, "Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?" Duggisetty responded she had one at "First American Bank," but did not list any cash and testified under oath that she was the only one who had access to the safe deposit box. (*Id.* at 47, 81). Duggisetty also made a number of sworn declarations that her statements were true and correct. (*Id.* at 67–69).

On January 3, 2018, Duggisetty's safe deposit box was opened and a large amount of jewelry and $25,520 in cash was discovered. (*Id.* at 96, 117, 123–125). Marc P. Trent, a licensed attorney who represented Duggisetty in her divorce and was trying to collect his legal fees, issued a citation to discover assets to First American Bank and secured access to her safe deposit box. (*Id*. at 96, 117). According to bank records and Heta Patel, the retail risk and service manager for First American Bank, Duggisetty accessed her safe deposit box 59 times in 2017. (*Id.* at 199).

On January 30, 2018, David Brown, the trustee in Duggisetty's case, conducted the meeting of creditors pursuant to section 341(a) of the Code. Duggisetty swore an oath to tell the truth and said that the information she had filed was accurate. (*Id.* at 74–75). Duggisetty was asked about the safe deposit box and testified that (a) the safe deposit box was in her name, (b) she was the sole owner, and (c) she was the only party with a key, but that her biggest mistake was that she had $5,000 in cash held in the safe deposit box that she did not declare. (*Id.* at 81). On February 3, 2018, four days after the 341 meeting, Duggisetty amended her Schedule A/B, stating that she did have jewelry and that she had $25,000 in cash in the safe deposit box. (*Id.* at 98, 100–01).

**II.     Denial of Duggisetty's Petition for Discharge**

After learning of the undisclosed jewelry and cash, the United States Trustee filed a complaint objecting to Duggisetty's discharge. The complaint alleged that Duggisetty's discharge should be denied on two counts: under section 727(a)(2)(A) for concealing the cash and jewelry with intent to defraud, and under section 727(a)(4) for knowingly making false oaths. (*Id.* at 113). The Bankruptcy Court set the matter for trial. At trial, Heta Patel testified that Duggisetty visited her safety deposit box numerous times in 2017 and that nobody had accessed the box between the opening of Duggisetty's safety deposit box and the filing of her bankruptcy case. (*Id.* at 197–203). The trustee then called David Brown to testify. Brown testified as to Duggisetty's statements that she had about $5,000 in the safe deposit bank, but that when he accessed the box he found a substantial amount of jewelry and cash. (*Id.* at 216 –19)

The United States Trustee then called Duggisetty to testify. Duggisetty confirmed her testimony at the 341 meeting that she had $5,000 in cash and that she had signed her bankruptcy petition, schedules and SOFA under penalty of perjury that the information in those documents was true and correct. (*Id.* at 247). Duggisetty admitted that she had left out assets, although she would only admit that she "forgot the 5,000," and not the total $25,000. (*Id.* at 256). Duggisetty did acknowledge that she amended her Schedule A/B to reflect the $25,000, not $5,000. (*Id.* at 257). Duggisetty at first denied that she kept the cash and jewelry a secret to hide it during her divorce, but then admitted it when confronted with her deposition testimony. (*Id.* at 258–261).

Duggisetty then presented her case. She stated that the "that last time [she] counted, it was $5,000" in the safe deposit box. (*Id.* at 309). Duggisetty also said that she read her bankruptcy petition before it was filed, but indicated that she was not aware of its accuracy. (*Id.* at 309–10). Duggisetty accepted responsibility for not disclosing the cash. (*Id.*). Duggisetty then testified

3

"[E]ven if I had know if I had $25,000, [] the total I owe to the creditors is much larger. So even if I did declare $25,000, even if I had $25,000, I would not be able to pay creditors." (*Id.* at 314). The Court asked Duggisetty how she could file for bankruptcy but forget about $25,000 in her security deposit box and she replied that it was a mistake, but her intention was not to defraud or hide anything. (*Id.* at 319–22). In her conclusion, Duggisetty said she took fault for missing "one single point of declaring the cash…even though my attorney asked me. I shouldn't be denied a discharge because . . . I honestly said that mistake happened. And when I found it, I took responsibility . . . and my attorney re-amended as per the bankruptcy law." (*Id.* at 323).

On re-direct examination, the United States Trustee asked Duggisetty questions which she evaded. The Court then said to Duggisetty, "I am getting a little tired of this. I'm going to get straight to the point. On January 3rd, 2018, your safe deposit box was drilled open and there's $25,000 in cash in there. Where did it come from? Simple question . . . $25,000, where did it come from?" (*Id.* at 330). Duggisetty then replied, "I don't know." (*Id.*).

The Bankruptcy Court made several findings. The Court denied Duggisetty's discharge under 11 U.S.C. § 727(a)(2)(A), finding a concealment because the "schedules that were filed on day one say zero in cash. That is crystal clear. There's no disclosure of cash in the safe deposit box. There's no disclosure of cash anywhere. It says zero." (*Id.* at 307). The Court found this non-disclosure to be "clearly . . . an act of concealment." (*Id.* at 381). The Court found an intent by Duggisetty to conceal the cash and denied her argument that she amended her schedules once the cash was discovered thereby negating her intent to conceal. (*Id.* at 378–84). The Court found Duggisetty to not be credible and rejected her various explanations for the undisclosed cash. (*Id.* at 379–81).

4

The Bankruptcy Court also denied Duggisetty's discharge under 11 U.S.C. § 727(a)(4). The Court found false statements regarding the undisclosed $25,000 in cash and that such statements were material. (*Id.* at 385–87). The Bankruptcy Court also found Duggisetty's credibility lacking and that her various explanations for the undisclosed cash were unconvincing. (*Id.* at 383, 386).

### III.   Duggisetty's Motion for New Trial

Ten days after the entry of the Bankruptcy Court's order, Duggisetty timely filed a motion for a new trial. (*Id.* at 390). Duggisetty alleged for the first time that her counsel for her bankruptcy proceedings filed different schedules than what she approved. (*Id.*). Duggisetty also claimed she had new evidence about the cash in the safety deposit box, although she did not state what the new evidence was. (*Id.*). After the United States Trustee responded and Duggisetty filed her reply, the Bankruptcy Court held a hearing on Duggisetty's motion on March 13, 2020. Duggisetty first alleged the new evidence was that the trustee received a cashier's check and not cash from the box. (*Id.* at 411). The Court explained the trustee merely converted the $25,000 in cash to a cashier's check, "and then that check was deposited in the bank. No one testified that a check was found in your safe deposit box. It was cash." (*Id.* at 412). Duggisetty's new evidence was her desire to re-examine the bank's security procedures. However, the Court explained to her that "[t]he banker who was responsible for the safety of the security box was on the witness stand. She testified as to the procedure. She testified who was there. She testified what had happened. She testified what they did. All of that evidence came out." (*Id.* at 415). Duggisetty continued to relitigate the issues the Court previously heard and stated that she was "rehashing things [the court had] heard about and read about many, many times" and thus asked Ms. Duggisetty to address only any newly discovered evidence. (*Id.* at 426). Duggisetty responded only that she felt she was "entitled to

5

know is where the money placed in a pile where it was when they opened the safety deposit box" and that she wanted "to take additional testimony from the bank." *Id.* The Bankruptcy Court then denied the motion because Duggisetty's arguments did not reflect any "new discovered evidence or manifest error of law." (*Id.* at 428).

## LEGAL STANDARD

A bankruptcy court's conclusions of law are reviewed de novo and its factual findings for clear error. *In re Resource Tech. Corp.*, 624 F.3d 376, 382 (7th Cir. 2010). If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court will not reverse its factual findings even if the Court would have weighed the evidence differently. *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008). In reviewing a bankruptcy court's decision to deny a discharge, an appellate court will not overturn the decision unless it is clearly erroneous. *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996) (citation omitted). A factual finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Kempff*, 47 F.3d 444, 448 (7th Cir. 2017).

A court reviews a denial of a motion for new trial under Rule 59(a) for abuse of discretion. *See Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). A party seeking to reverse a court's denial of a motion for a new trial bears a particularly heavy burden. *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004). In general, a court abuses its discretion when no reasonable person would agree with its rulings. *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018).

**DISCUSSION**

**I.     Denial of Duggisetty's Petition under 11 U.S.C. § 727(a)**

The Bankruptcy Court clearly did not abuse its discretion in justifying the denial of Duggisetty's petition under 11 U.S.C. § 727(a)(2)(A) or Section 727(a)(4)(A).  Proof of conduct satisfying any one of § 727(a)'s sub-sections is enough to deny discharge.  *In re Krehl*, 86 F.3d 737, 744 (7th Cir. 1996) (internal citation omitted).  Here, there was ample proof to support the Bankruptcy Court's findings under both of § 727(a)'s subsections.

The discharge provided by the Bankruptcy Code is meant to effectuate the "fresh start" goal of bankruptcy relief.  *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir.2002).  The Bankruptcy Code requires debtors to accurately and truthfully present themselves before the court in exchange for this fresh start. *Stathopoulos v. Bostrom* (*In re Bostrom*), 286 B.R. 352, 359 (Bankr. N.D.Ill.2002), *aff'd*, No. 02 C 9451, 2003 WL 403138 (N.D. Ill. Feb.20, 2003).  Therefore, a discharge is only for the honest debtor.  *In re Chlad*, 922 F.3d 856, 850 (7th Cir. 2019).

**A.     Section 727(a)(2)(A)**

Section 727(a)(2) of the Bankruptcy Code provides that a debtor shall be granted a discharge unless:

> (2)     the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed . . .
>
> (A) property of the debtor, within one year before the date of filing of the petition.

A party objecting to a discharge under § 727(a)(2)(A) must show, by a preponderance of the evidence that:  (1) the debtor (2) transferred, removed, concealed, destroyed, or mutilated (3) the debtor's property, (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor.  *See In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002).  The exception to discharge in § 727(a)(2)(A) essentially "consists of two components:  an act (i.e., a

7

transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor). *Id.* Because direct evidence of a debtor's intent usually will be unavailable, it may be inferred from the circumstances surrounding his objectionable conduct. *In re Krehl*, 86 F.3d at 743. The intent determination often will depend upon a bankruptcy court's assessment of the debtor's credibility, making deference to the court's finding particularly appropriate. *Id.*

Duggisetty does not dispute that any of these prongs have been met. Indeed, she could not. As discussed above, the Bankruptcy Court found concealment because the "schedules that were filed on day one say zero in cash. That is crystal clear. There's no disclosure of cash in the safe deposit box. There's no disclosure of cash anywhere. It says zero." (Dkt. 26-1. at 307). The Court found an intent by Duggisetty to conceal the cash and denied her argument that she amended her schedules once the cash was discovered thereby negating her intent to conceal. (*Id.* at 378–84). The Bankruptcy Court found Duggisetty not credible and rejected her various explanations for the undisclosed cash. (*Id.* at 379–81). Duggisetty admitted that she hid the money and the Court found her various explanations not credible The Bankruptcy Court did not commit any mistake. *In re Kempff*, 47 F.3d at 448. The Bankruptcy Court's findings were appropriate and its decision to deny discharge under Section 727(a)(2) is affirmed.

### B. Section 727(a)(4)(A)

The Bankruptcy Court properly justified its denial of Duggisetty's petition under Section727(a)(4), which withdraws discharge eligibility if the debtor "knowingly and fraudulently" makes "a false oath or account" in connection with the bankruptcy proceeding. A party who opposes discharge under this provision must prove the following: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false;

8

(4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *In re Kempff*, 847 F.3d at 449 (citation omitted). Fraudulent intent "includes intending to deceive, which need not connote intending to obtain a pecuniary benefit." *In re Katsman*, 771 F.3d 1048, 1050 (7th Cir. 2014) (internal quotation marks and alteration omitted). Evidence of "reckless disregard for the truth is sufficient to prove fraudulent intent." *Stamat v. Neary*, 635 F.3d 974, 982 (7th Cir. 2011).

With regards to the fraudulent intent inquiry, "[w]hether a debtor possessed the requisite intent to defraud is a question of fact, which is subject to the 'clearly erroneous' standard of review" and often depends upon a bankruptcy court's assessment of the debtor's credibility. *In re Kempff*, 847 F.3d at 449.

Again, Duggisetty does not take issue with whether the test was met here. The Bankruptcy Court made a number of factual findings and thoroughly developed the record as to why it denied Duggisetty's petition under § 727(a)(4)(A). Duggisetty made false statements in her schedules and SOFA, and the omission of assets from the same can constitute a false oath for purposes of § 727(a)(2)(A). *See, e.g., Stamat*, 635 F.3d at 981–82. The Bankruptcy Court found that Duggisetty knew the statement that she had no cash was false and that she made that statement with fraudulent intent. The record supports such a finding. The Bankruptcy Court found Duggisetty's credibility lacking and that her changing explanations for her non-disclosure were unavailing because she is "a debtor who is very educated, very intelligent…" (Dkt. 26-1 at 383, 386). The Bankruptcy Court told Duggisetty that "it's much more incredible that the cash wouldn't have been disclosed, that you wouldn't recall where it came from, and that you keep changing your story." *Id.* at 383.

9

Based on the record before the Court, the Bankruptcy Court's decision was not clearly erroneous. There was ample support for the Bankruptcy Court's position. The denial of Duggisetty's petition under § 727(a)(4)(A) is affirmed.

## II. Denial of New Trial

After holding a hearing on Duggisetty's Motion for New Trial, the Bankruptcy Court denied the motion, finding that Duggisetty sought to relitigate issues that had already been heard during trial.[1] (Dkt. 26-1 at 415, 426, 428). The Court reviews the denial of a motion for new trial under the abuse of discretion standard. *Kapelanski*, 390 F.3d at 530. The Bankruptcy Court did not abuse its discretion. Duggisetty did not present any new evidence that would preclude judgment and could not establish that the Bankruptcy Court committed a manifest error of law or fact. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013).

Even in the instant appeal, Duggisetty seeks to relitigate claims that were already heard and decided in the Bankruptcy Court. Had Duggisetty desired to interview bankers at First American Bank about the bank's security procedures, she had ample opportunity to do so during the original trial. (Dkt. 26-1 at 415). Duggisetty also sought to put forth a new argument that the schedules on file were not the schedules she had approved, which she reiterates here. (Dkt. 23 at 1; Dkt. 26-1 at 390). However, Duggisetty also had ample opportunity to raise this issue before the Bankruptcy Court. (Dkt. 26-1 at 400). As to her argument that the new evidence was that the trustee received a cashier's check and not cash from the box. (*Id.* at 411), the Bankruptcy Court

---

[1] Fed. R. Bankr. P. 9023 incorporates Federal Rule of Civil Procedure 59. Rule 59(a)(1)(B) states a new trial may be granted "on all or some of the issues . . . after a nonjury trial for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Rule 59(a)(2) states that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."

clearly explained why that was not the case. (*Id.* at 412). The Bankruptcy Court's denial of the Motion for New Trial was clearly justified and was therefore not an abuse of discretion.

## CONCLUSION

Because the Bankruptcy Court's denial of Duggisetty's petition was not clearly erroneous, its decision is affirmed. Its denial of Duggisetty's motion for new trial was not an abuse of discretion and is also affirmed.

_____
Virginia M. Kendall
United States District Judge

Date: October 19, 2020

11